UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BAIER,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; and DOES 1 through 8, as individuals.<br><br>         Defendants. | Case No.: 24-cv-00893-AJB-VET<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 8)** |

Before the Court is Defendant City of San Diego's ("Defendant" or "City") motion to dismiss Plaintiff Edward Baier's ("Plaintiff") Complaint. (Doc. No. 8.) The motion is fully briefed. (Doc. Nos. 8, 15, 17.) For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

I. **BACKGROUND**[1]

Plaintiff, a San Diego resident, is a freelance photojournalist and sports and entertainment cameraman. (Compl. ¶ 5.) He collects and distributes videos to news organizations and media outlets, typically for a fee. (*Id.*) On November 27, 2023, Plaintiff

---

[1] The following facts are taken from Plaintiff's complaint, (Doc. No. 1, "Compl."), which the Court construes as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

1

24-cv-00893-AJB-VET

1  was driving south on Mission Bay Drive, parallel to Interstate 5 ("I-5"), when he observed
2  a San Diego Police Department ("SDPD") helicopter circling the area. (*Id.* ¶ 12.) He also
3  saw several SDPD vehicles parked on the offramp from southbound I-5 to Clairemont
4  Drive. (*Id.* ¶ 13.) Plaintiff approached the area where the helicopter was circling, entered
5  Clairemont Drive from Mission Bay Drive, and parked his van at the base of the bridge
6  over I-5. (*Id.* ¶ 14.) Plaintiff walked on the public sidewalk on top of the bridge, and using
7  his cell phone camera, began to record an incident on the ground below. (*Id.* ¶¶ 15–16.)
8  The incident involved a bloodied man being handcuffed and surrounded by police officers.
9  (*Id.* ¶¶ 17, 19.) Plaintiff later learned that the man had jumped from the bridge. (*Id.* ¶ 19.)
10       About five minutes after Plaintiff arrived, a SDPD sergeant came to the scene, saw
11 Plaintiff recording above, and sent an officer up to Plaintiff's position on the bridge.
12 (Compl. ¶¶ 21–22.) Around that time, Plaintiff left the bridge to move his van a block from
13 its original position and then walked back to the bridge and resumed recording. (*Id.* ¶¶ 23–
14 24, 26.) SDPD officers saw Plaintiff walking with his cell phone to the bridge and recording
15 the incident, but none of them said anything to him. (*Id.* ¶¶ 25–28.)
16       According to Plaintiff, the SDPD sergeant directed three officers to arrest him. (*Id.*
17 ¶ 29.) They approached Plaintiff from behind and arrested him. (*Id.* ¶¶ 30–31.) One of the
18 officers searched Plaintiff's person and impounded his camera, keys, and personal
19 documents. (*Id.* ¶ 33.) Other officers searched Plaintiff's van and impounded it. (*Id.*) The
20 officers held Plaintiff in the back of the police car for over an hour before driving him to
21 the downtown police headquarters. (*Id.* ¶¶ 35–36.) After forty minutes in the police
22 headquarters, an officer transported Plaintiff to the downtown County jail, where he
23 remained in custody for about sixteen hours. (*Id.* ¶¶ 37–38.) No charges were filed against
24 Plaintiff. (*Id.* ¶ 40.)
25       On May 21, 2024, Plaintiff filed a Complaint, alleging five causes of action: (1) false
26 arrest in violation of the Fourth Amendment, (2) false imprisonment/false arrest under
27 California state law, (3) illegal search and seizure of Plaintiff's van and belongings in
28 violation of the Fourth Amendment, (4) retaliation in violation of the First Amendment,

and (5) violation of civil rights under California Civil Code §52.1. (Compl. ¶¶ 41–77.) The City's instant motion to dismiss follows.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

## III.   DISCUSSION

The City argues that the entirety of Plaintiff's Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim because "the officers had probable cause to arrest Plaintiff and probable cause is a complete defense to all the causes of action." (Doc. No. 9-1 at 9.) Specifically, the City contends that at the time of the incident, Plaintiff was on probation, and that he was violating the terms of his probation, which required him to be 15 yards from police investigating or securing a scene, when the officers arrested him and impounded and searched his van. (*Id.*)

In support, the City filed a request for judicial notice of: (1) a certified copy of a September 12, 2023 Order of the San Diego Superior Court containing the terms of Plaintiff's probation ("Probation Order"); (2) five video clips from an officer's body worn camera and corresponding transcripts; and (3) excerpts of the California Department of Transportation Highway Design Manual ("Caltrans Manual"). (Doc. No. 8-2 at 1–2.) The

Court considers the City's request for judicial notice and assertion of probable cause, in turn.

### A. Request for Judicial Notice

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

#### 1. Probation Order

As an initial matter, the Court notes that in his response, Plaintiff opposed only the City's request for judicial notice of the Caltrans Manual and the videos and transcripts. (Doc. No. 16 at 2–5.) There being no dispute as to the authenticity of the Probation Order and it being a public state court document, the Court **GRANTS** the City's request for judicial notice of the terms of Plaintiff's Probation Order. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (A "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.") (citation omitted); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking "judicial notice of a California Court of Appeal opinion").

#### 2. Caltrans Manual

With respect to the Caltrans Manual excerpts, Plaintiff does not dispute the document's accuracy or authenticity but argues the Court should deny taking judicial notice because it does not provide relevant information. (Doc. No. 16 at 4.) The Court is unpersuaded. The Caltrans Manual contains information about the measurement and clearance requirements for California highways and bridges, which could bear on the key issue in this case—whether Plaintiff, who was atop a California highway bridge, was within 15 yards of the police conducting an investigation or securing a scene below. There being no reasonable dispute as to the Caltrans Manual's accuracy or authenticity, and it being a matter of public record, the Court **GRANTS** the City's request for judicial notice of the measurement requirements therein.

### 3. Videos and Transcripts

As to the five body camera videos and corresponding transcripts, the City requests the Court consider these materials pursuant to the incorporation by reference doctrine. "[A] defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotation marks and citation omitted).

Here, the Complaint makes no reference to the videos, so the question becomes whether they necessarily form the basis of Plaintiff's claim. The Court finds they do not. The Ninth Circuit has instructed that "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* Because the City asks the Court to consider the videos in support of their theory that the officers had probable cause to arrest Plaintiff, which in their own words, "is a complete defense to all the causes of action," (Doc. No. 8-1 at 9), the Court finds they do not necessarily form the basis Plaintiff's Complaint. *See Khoja*, 899 F.3d at 1002. *See also Patterson v. City of Yuba City*, 884 F.3d 838, 841 (9th Cir. 2018) ("Under California law, probable cause to arrest is an affirmative defense to a claim of false arrest.") (citation omitted). While the Complaint includes allegations concerning the incidents captured in the videos and transcripts, "it is plain that Defendants offer [them] in an effort to short-circuit the resolution of Plaintiff's claims. This is impermissible." *Keith v. City of San Diego*, No. 22-CV-1226-MMA-DEB, 2023 WL 5618941, at *2 (S.D. Cal. Aug. 30, 2023) (citing *Khoja*, 899 F.3d at 1003).

Moreover, as a district court persuasively explained, "[a] complaint necessarily relies on a piece of evidence when the piece of evidence itself is indispensable to a claim in the complaint." *Est. of Smith by Smith v. City of San Diego*, No. 16-CV-2989-WQH-MDD, 2018 WL 3706842, at *3 (S.D. Cal. Aug. 3, 2018) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1178–79 (9th Cir. 2013)). Like in *Est. of Smith by Smith*, the Court finds that neither the videos nor the transcripts are an indispensable part of Plaintiff's claims. They

are merely evidence of the incident alleged in the Complaint; Plaintiff would have cause to bring this action regardless of their existence. Consequently, contrary to the City's assertions, the Complaint does not necessarily rely on the video or the transcripts, and the Court may not consider them when analyzing the instant motion to dismiss. *Id.*;[2] *accord R.P. v. City & Cnty. of San Francisco*, No. 24-CV-00522-LJC, 2025 WL 416363, at *3 (N.D. Cal. Feb. 6, 2025) ("although the video footage might provide evidence to support or undermine [the plaintiff's] excessive force claim, it is not integral to that claim in the same sense as the materials courts have found to be incorporated by reference").

Based on the foregoing, the Court **DENIES** the City's request to consider the videos and transcripts under the incorporation by reference doctrine.[3]

### B. Probable Cause

Turning to the merits of the motion to dismiss, the Court rejects the City's argument that Plaintiff's Complaint fails to state a claim because the officers had probable cause to arrest Plaintiff for violating the terms of his probation. (Doc. No. 8-1 at 9–10). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *D.C. v. Wesby*, 583 U.S. 48, 56–57 (2018) (internal quotations omitted).

---

[2] As a side note, the City confoundingly and erroneously cites both *Keith* and *Est. of Smith by Smith* as supportive of its position. *Compare* (Doc. No. 8-2 at 4), with *Keith*, 2023 WL 5618941, at *2 (declining to consider the videos and explaining that a majority of courts "have declined to either accept or consider such evidence in resolving motion[s] to dismiss") and *Est. of Smith by Smith*, 2018 WL 3706842, at *3 (same, explaining that "the SAC does not necessarily rely on the Videos or the Transcripts, and the Court may not consider the Videos or the Transcripts when analyzing the City Defendants' Motion under Rule 12(b)(6)."). The Court acknowledges that the City cites other district court cases, but find them lacking persuasive analysis, and in any event, not binding.

[3] The Court recognizes that it has incorporated by reference into a complaint material of this type in another case, *Covert v. City of San Diego*, No. 15CV2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017). That case, however, is distinguishable. Unlike here, the complaint at issue in *Covert* contained express allegations about the officers' body camera, asserting that the they intentionally turned them off while the excessive force occurred. *Id.* at *2. No such reference or claim is raised in Plaintiff's Complaint. Thus, *Covert* does not control here.

| | |
|---|---|
| 1 | While the parties do not dispute that probable cause is a defense to all of Plaintiff's claim, the Court notes that determination of this issue requires a fact-specific inquiry that is generally premature at the pleading state. Additionally, the Probation Order and the Caltrans Manual, which the Court considers under Rule 201, are not dispositive of the issue. They merely establish that Plaintiff has been ordered to be 15 yards from police conducting an investigation or securing a scene and that highways and bridges have certain clearance measurement requirements. The exact distance between Plaintiff and the operative area in this case, as well as the officers' reasonable perceptions thereof, remain open questions. |

While the parties do not dispute that probable cause is a defense to all of Plaintiff's claim, the Court notes that determination of this issue requires a fact-specific inquiry that is generally premature at the pleading state. Additionally, the Probation Order and the Caltrans Manual, which the Court considers under Rule 201, are not dispositive of the issue. They merely establish that Plaintiff has been ordered to be 15 yards from police conducting an investigation or securing a scene and that highways and bridges have certain clearance measurement requirements. The exact distance between Plaintiff and the operative area in this case, as well as the officers' reasonable perceptions thereof, remain open questions.

As alleged in the Complaint, leading up to the arrest, Plaintiff was on a public sidewalk atop a bridge overlooking I-5 and recording police handcuffing a bloodied individual a distance below. (Doc. No. 1 at 4–5.) True, the Probation Order states that Plaintiff "shall keep at least 15 yards away from police conducting an investigation or securing a scene, or a distance otherwise directed by law enforcement." (Doc. No. 8-3 at 6.) But despite the officers observing Plaintiff walking with his cell phone camera to the top of the bridge and seeing him recording the events below, none of them said anything to him. (Doc. No. 1 at 5.) There were also two civilians on the sidewalk with Plaintiff observing the incident and several others walking through to cross the bridge. (*Id.* at 4.) It is not reasonable to infer from these facts that the officers believed the sidewalk atop the bridge was part of the area from which Plaintiff was prohibited.

As to whether Plaintiff was 15 yards from the officers and scene below, the Caltrans Manual is not determinative of the issue. While it does state that bridges or overpasses must have a maximum clearance of less than 15 yards, the requirement does not, by itself, establish the actual distance between Plaintiff and the operative scene. There is no allegation that the officers were directly below the bridge, and a distance farther than 15 yards can be reasonably inferred from the allegation that the officer had to go up "a steep embankment to [Plaintiff's] position on top of the bridge" to make the arrest. (*Id.* at 5.) As such, nothing in the Complaint or the Caltrans Manual conclusively establishes that an

objectively reasonable officer would have perceived Plaintiff to be in violation of his Probation Order.

Further, Plaintiff argues, and the City did not dispute, that "California courts have consistently held that probation violations must be willful to constitute a crime." (Doc. No. 15 at 17 (citing cases).) Considering Plaintiff's allegations that, at the time, he did not know that the man being handcuffed by police had jumped off the bridge; that he was a steep distance away from the scene; that traffic was unobstructed; that other civilians were on the bridge with him; and that police did not say anything to him despite seeing him on the bridge recording, (Doc. No. 1 at 4–5), it could be inferred that any probation violation was accidental, as opposed to willful. *See, e.g.*, *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) (reversing a district judge's grant of summary judgment finding that assuming the plaintiff's assertion that the alleged crime was accidental, "the jury could reasonably conclude that police did not have probable cause to arrest").

Thus, accepting as true the factual allegations in the Complaint and drawing all reasonable inferences in Plaintiff's favor, the Court finds that he has adequately pled that the officers lacked probable cause to arrest him.[4] Accordingly, the Court **DENIES** the City's motion to dismiss.

## IV.    CONCLUSION

For the reasons stated herein, the Court **DENIES** the City's motion to dismiss. The Answer to the Complaint must be filed no later than March 14, 2025.

**IT IS SO ORDERED**.

Dated:  March 3, 2025

Hon. Anthony J. Battaglia
United States District Judge

---

[4] The City objected to declarations that Plaintiff attached to its response brief. But as the Court does not rely on them in reaching its decision, the City's objections are denied as moot.